UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| BRAYAN ERNESTO DEL CID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-0611 (TSC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR FEES AND COSTS**

Defendant, the United States Department of Justice, Executive Office for Immigration Review ("Defendant" or "EOIR"), opposes Plaintiff's Motion for Attorneys' Fees and Costs in this Freedom of Information Act ("FOIA") case.  Plaintiff suggests that he is both eligible and entitled to fees and costs in a case where there is no evidence that his lawsuit caused the release of any agency records and there is no dispute that Plaintiff sought the documents at issue for his own personal benefit and not for any public informational purpose.  Accordingly, Plaintiff's Motion should be denied.

As support for this opposition, Defendant submits the Declaration of Crystal R. Souza, with attached exhibits A through I.  Ms. Souza is a Supervisory Government Information Specialist with the U.S. Department of Justice, Executive Office for Immigration Review, Office of the General Counsel, Freedom of Information Act Service Center in Falls Church, Virginia.  She is intimately familiar with the EOIR FOIA program and the request at issue.

**BACKGROUND**

On November 2, 2020, Plaintiff submitted a FOIA request to EOIR in which he sought the Record of Proceedings ("ROP") pertaining to his prior immigration case.  According to Plaintiff,

he sought these documents because he had a removal order that ICE was seeking to enforce, and he wanted to review the removal proceedings.  Compl. ¶ 5; *see also* Pl.'s Mot. at 3 (Plaintiff needed "to determine what had occurred during the removal proceedings").  At the time Plaintiff submitted his request, however, EOIR employees, including employees assigned to the EOIR's FOIA Service Center, were directed to participate in maximum telework due to the global pandemic until further notice.  Souza Decl. ¶ 9.  Because most ROPs are hard copies, this limitation greatly affected the ability to process FOIA requests for ROPs, and the limitations continue.  *Id.*  Further, there was a significant backlog of FOIA requests in FY2018, FY2019, FY2020, and FY 2021.[1]  Souza Decl. ¶ 8.

Despite the significant backlog of FOIA requests that had accumulated during those years, and the restrictions faced by the Defendant due to the pandemic, EOIR acknowledged Plaintiff's request on November 16, 2020, two weeks after the FOIA request.[2]  It was also determined that date that the relevant ROP would come from the Baltimore Immigration Court on November 16, 2020.  Souza Decl. ¶ 11.  The November 16, 2020, acknowledgement letter also notified Plaintiff that the request involved unusual circumstances requiring EOIR to extend the period to respond by an additional 10 working days.  *Id.*  On November 5, 2020, Plaintiff's counsel sent correspondence to the EOIR Service Center requesting expedited processing of the November 2, 2020 FOIA request.  Souza Decl. ¶ 13.  Because the request did not meet the standard for expedited processing, the request was denied, and Plaintiff was so informed on November 19, 2020.  *Id.*

---

[1]     For fiscal year 2020, EOIR processed 42,674 FOIA requests and had a backlog of 10,923 requests.

[2]     Plaintiff asserts in his motion, at p.3, that he "did not receive a response to his November 2, 2020 FOIA request in a timely manner and despite multiple attempts, he was unable to receive a response from Defendant."  This is incorrect.  A prompt response was sent on November 16, 2020.  Souza Decl. ¶ 11, and email response attached as Exhibit E.

Therefore, Plaintiff was promptly notified of the receipt of the FOIA request and the denial of expedited processing.

As early as December 7, 2020, and subsequent thereto, EOIR requested Plaintiff's ROP from the Baltimore Immigration Court staff who were responsible for ordering the ROP from the Federal Records Center in Suitland, Maryland ("Records Center").  Souza Decl. ¶ 14; Ex. E.  As with the FOIA Service Center personnel, the Baltimore Immigration Court has been allowed to enter the courts on a limited basis and the ability to process ROP's for the FOIA Service Center has been limited due to the pandemic and staff shortages.  Souza Decl. ¶ 14.  Additionally, the operating staff of the Records Center only recently reached 25% and is limited to ordering ROP's for detained respondents only.  *Id.*

Therefore, as of December 7, 2020, EOIR had already sent the request for Plaintiff's ROP to the third-party for processing.  Plaintiff initiated this FOIA action on March 8, 2021.  From the date of the filing of the FOIA request to the date of the filing of the complaint, there was no contact from the Plaintiff with the FOIA Service Center or the EOIR FOIA Public Liaison to inquire on the status of the request.  Souza Decl. ¶¶ 11, 15.  This timeline demonstrates that EOIR was diligently processing Plaintiff's request well before suit was filed and there is no indication that any delay was due to intransigence.

Also, from April 9, 2021, through May 4, 2021, Defendant took extraordinary steps to process Plaintiff's FOIA request.  On April 9, 2021, EOIR issued a response disclosing Plaintiff's entire official hard copy ROP unredacted, including audio files related to Plaintiff's immigration proceeding.  *Id.* ¶ 16.  On April 16, 2021, a new CD with all of the audio files that could be located was sent to Plaintiff, after Plaintiff claimed the prior files did not pertain to him, which was incorrect.  *Id.* ¶ 17.  On April 26, 2021, EOIR sent yet another CD of Plaintiff's audio files due to

Plaintiff's attorney's claims that the prior CD was not readable. *Id.* ¶ 18. On May 4, 2021, all locatable audio files related to Plaintiff's immigration proceeding were reviewed based on Plaintiff's attorney's claim that she did not receive an audio file for an alleged hearing in August of 2006. After a thorough review, no such audio was located, and Plaintiff was so advised. *Id.* ¶ 19.

Thus, Defendant promptly responded to Plaintiff's FOIA request and began processing the request by looking for the ROP's well before the complaint was filed. This was done despite a large FOIA request backlog and severe staff shortages and other restraints caused by the pandemic. Furthermore, the parties never actually litigated any matter pertaining to the processing of Plaintiff's FOIA request and the only orders issued by this Court concerned the filing of joint status reports and the setting of a briefing schedule. Nevertheless, Plaintiff now seeks an order from this Court awarding Plaintiff attorney's fees and costs in the amount of $6240.80. *See* Pl.'s Mot. p. 4.

## **LEGAL STANDARD**

Attorney's fees are not automatic or even presumed under the FOIA. Instead, the decision to award fees, and the determination of what fee is reasonable, is left to the Court's discretion. *See, e.g.*, *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977); *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 714 (D.C. Cir. 1977). A court "'may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred' in any FOIA case where 'the complainant has substantially prevailed.'" *EPIC v. DEA*, 266 F. Supp. 3d 162, 167 (D.D.C. 2017) (quoting 5 U.S.C. § 552(a)(4)(E)(i)) (emphasis in original); *see also Codrea v. ATF*, 272 F. Supp. 3d 49, 52 (D.D.C. 2017). The question of whether a plaintiff "substantially prevailed" requires a "two-pronged" approach. *Clemente v. FBI*, 867 F.3d 111, 120 (D.C. Cir. 2017). First, the Court evaluates whether the plaintiff is "'eligible' for attorney fees[.]" *Codrea*, 272 F. Supp.

3d at 52 (quoting *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011)). Second, the Court evaluates "'whether certain factors suggest the plaintiff is entitled to attorney fees.'" *Id.* (quoting *Clemente*, 867 F.3d at 120). "Thus, to obtain attorney fees under the FOIA, the plaintiff must demonstrate both eligibility and entitlement to the award." *Id.* It is the plaintiff's burden to establish both eligibility and entitlement. *Grand Canyon Trust v. Zinke*, 311 F. Supp. 3d 381, 386 (D.D.C. 2018) *aff'd*, 947 F.3d 94 (D.C. Cir. 2020). If the plaintiff establishes both eligibility and entitlement, it must then show that "the requested award is reasonable." *Cornucopia Inst. v. Agric. Mktg. Serv.*, 285 F. Supp. 3d 217, 226 (D.D.C. 2018).

## ARGUMENT

In this case, Plaintiff has demonstrated neither his eligibility nor his entitlement to an award of attorneys' fees. Plaintiff has not shown that he is eligible for a fee award because he has not demonstrated that he obtained relief through any judicial order or any voluntary or unilateral change in position by the agency. Further, Plaintiff has not shown that he is entitled to such an award because there is no question that his FOIA request was not calculated to confer any public benefit, but rather for Plaintiff's very own private advantage. Accordingly, this Court should deny Plaintiff's Motion.

## I.   PLAINTIFF IS NOT ELIGIBLE FOR ATTORNEYS' FEES

As an initial matter, FOIA's fee-shifting provision "'was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold,' but instead 'had a more limited purpose—to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.'" *Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008)

("*Davy II*") (quoting *Nationwide Bldg.*, 559 F.2d at 711). Where the parties are "able to resolve all document production issues without the Court's involvement . . . 'the government's compliance with the plaintiff['s] request so early in the litigation is not the sort of agency behavior that Congress intended to prevent by awarding attorney's fees.'" *Grand Canyon*, 311 F. Supp. 3d at 392 (quoting *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012)).  Indeed, the Senate Judiciary Committee Report accompanying the Open Government Act of 2007 noted that "[i]f the government is  forced to pay attorney's fees even if it settles a lawsuit without court action . . . then we may well find that the government is less inclined to settle FOIA lawsuits."  S. Rep. No. 110–59, at 14. With these principles in mind, the discussion below explains why Plaintiff is not eligible for attorneys' fees or costs.

To be eligible for attorneys' fees, a plaintiff must have either "obtained relief through . . . a judicial order or 'a voluntary or unilateral change in position by the agency[.]'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(E)(ii)).  Plaintiff did not obtain any relief by judicial order.  In the brief history of this litigation, the Court has entered no order other than to set dates for the parties to file their next joint status report.  *See Summers v. Dep't of Just.*, 569 F.3d 500, 505 (D.C. Cir. 2009) (holding that court-ordered status reports did not entitle a plaintiff to fees and costs under FOIA).  Thus, to be eligible for fees, Plaintiff must show that the litigation brought about a "voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii).

In evaluating whether that standard is met, "[t]he D.C. Circuit has long employed a 'catalyst theory,' which evaluates whether a plaintiff has substantially prevailed based on whether he or she substantially caused the government to release the requested documents before the final judgment." *Cornucopia Inst.*, 285 F. Supp. 3d at 224 (quotation marks omitted). "[T]his inquiry is largely a question of causation." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir.

1984).  A plaintiff "must show that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Pub. Citizen Health Rsch. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990). "[T]he catalyst theory is available when the plaintiff demonstrates that the litigation caused the agency to change its position voluntarily and release requested records." *Nat'l Sec. Counselors v. CIA*, Civ. A. No. 11-0444, 2017 WL 5633091, at *8 (D.D.C. Nov. 21, 2017).

In this case, Plaintiff argues that he is eligible for fees because he has substantially prevailed under the catalyst theory as the looming deadline to file an answer "compelled and motivated Defendant to provide Plaintiff with the requested documents or face consequences from this Court." Pl.'s Mot. at 5.  But "[t]he law in this Circuit is well established that causation requires more than correlation." *Grand Canyon*, 311 F. Supp. 3d at 388.  Thus, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg*, 745 F.2d at 1496; *see also Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 3d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative proceedings."); *Codrea*, 272 F. Supp. 3d at 53 ("[A]n agency's delay in response until after a lawsuit is filed may be the result of factors having nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests."). So, while timing is a relevant factor, something "more than *post hoc*, *ergo propter hoc* must be shown." *Pub. Law Educ. Inst. v. Dep't of Just.*, 744 F.2d 181, 183 (D.C. Cir. 1984); *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 83 F. Supp. 3d 297, 303 (D.D.C. 2015) ("Although the time between the plaintiff's initiation of this lawsuit and the agency's release of responsive records is indeed a salient factor in the Court's analysis, it is by no means dispositive evidence of causation." (citing *Pub. Law Educ. Inst.*, 744 F.2d at 184 n.5)).

Here, Plaintiff offers nothing to "prov[e] 'a causal nexus exists between' [his] suit and 'the agency's surrender of . . . information.'" *Cornucopia Inst.*, 285 F. Supp. 3d at 225 (quoting *Weisberg*, 745 F.2d at 1496). In fact, the Declaration of Crystal R. Souza shows that it was not Plaintiff's lawsuit that caused EOIR to respond to the FOIA request. As the D.C. Circuit has stated, "the causation inquiry must take into account whether the agency upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed." *Weisberg*, 745 F.2d at 1496 (internal quotation marks and citations omitted). Plaintiff filed his initial Complaint on March 8, 2021, *see* Compl. ECF No. 1, but, by that time, EOIR's processing of Plaintiff's request was already well underway. Indeed, before Plaintiff filed his Complaint, EOIR's FOIA Service Center had requested searching for Plaintiff's ROP from the Baltimore Immigration Court. Souza Decl. ¶¶10-14. Thus, when Plaintiff filed his Complaint, EOIR was processing the FOIA request and was merely awaiting a third-party contractor to copy and scan the ROP so that it could be issued to Plaintiff.

Because EOIR made a good-faith effort to promptly search for the requested information and respond to the FOIA request, and the ultimate release was the result of a diligent, ongoing process that began before the initiation of the lawsuit, Plaintiff has not shown that his lawsuit was the catalyst for EOIR's response to his FOIA request. *See, e.g., Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F.Supp.2d 1, 5 (D.D.C. 2011) (holding that Plaintiff did not "substantially prevail" because "defendant made a good faith effort to search for information and respond to plaintiffs' request" and "that the delay in the Coast Guard's release was not due to intransigence, but rather was the result of a diligent, ongoing process that began before the initiation of the instant lawsuit."); *Bigwood v. Def. Intel. Agency*, 770 F.Supp.2d 315, 321 (D.D.C. 2011) (holding that

although production was "extraordinarily delayed," the agency searched for and reviewed

documents prior to litigation, so no causal nexus existed between the litigation and release).

## II.     PLAINTIFF IS NOT ENTITLED TO AN AWARD OF FEES BECAUSE THE FOIA REQUEST IMPARTED NO PUBLIC BENEFIT AND WAS INTENDED FOR PLAINTIFF'S OWN PRIVATE ADVANTAGE.

In addition, Plaintiff also fails to demonstrate that he is entitled to an award of attorney's

fees.  Courts employ the four familiar factors to determine whether a FOIA plaintiff is entitled to

attorney's fees: "(1) the public benefit derived from the case; (2) the commercial benefit to the

plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the

agency's withholding." *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) (quoting *Tax Analysts v.

Dep't of Just.*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)).  The plaintiff bears the burden of proof on

each issue.  *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  As

explained below, the weight of these factors in this case demonstrates that Plaintiff is not entitled

to an award of attorneys' fees because the request was not calculated to confer any public benefit,

but rather to benefit Plaintiff for his own private advantage.

### A.     Plaintiff's Lawsuit Conferred No Public Benefit

The first factor, which concerns the public benefit derived from the case, "requires

consideration of both the effect of the litigation for which fees are requested and the potential

public value of the information sought." *Davy II*, 550 F.3d at 1159; *see also McKinley*, 739 F.3d

at 711 ("The first factor considers the significance of the contribution that the released information

makes to the fund of public knowledge.").  To provide the requisite public benefit, the D.C. Circuit

has long required that the newly released information assist the public in making "vital political

choices."  As the Court explained:

> The release of any government document benefits the public by increasing citizens'
> knowledge of their government.  Congress did not have this sort of broadly defined

> benefit in mind, however, in enacting section 552(a)(4) (E).  The legislative history indicates that the "public benefit" criterion "speaks for an award (of attorney's fees) where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices."  *Blue v. Bureau of Prisons*, 570 F.2d 529[, 534] (5th Cir. 1978).

*Fenster v. Brown*, 617 F.2d 740, 744-45 (D.C. Cir. 1979); *see also Cotton v. Heyman*, 63 F. 3d 1115, 1120 (D.C. Cir. 1995) (holding that public benefit is established where release of the requested information "is likely to add to the fund of information that citizens may use in making vital political choices.").

Here, there can be no dispute that Plaintiff's lawsuit did not reveal information that would assist the public in making "vital political choices" and that it therefore conferred no public benefit. As Plaintiff acknowledges, the records subject to Plaintiff's FOIA request were a copy of his ROP with respect to his own removal proceeding.  Pl.'s Mot. at 3; Compl. ¶ 5.  Thus, the documents sought concern precisely the kind of highly particularized interaction with an agency for which there is only limited public interest and for which Courts typically find insufficient public benefit. *See Dorsen v. SEC*, 15 F. Supp. 3d 112, 121 (D.D.C. 2014) ("Generally, released documents have an insufficient public benefit when they pertain to such highly particularized interactions with an agency that non-participants would have only a limited interest in the records as a means of learning what the agency was doing.").

Plaintiff requested the ROP's regarding his removal hearing; he cannot successfully argue that there was any public benefit to disclosure of this information.

**B.    The "Commercial Benefit" and "Plaintiff's Interest" Tests Counsel Against An Award of Fees**

The second factor (the request's commercial benefit to the plaintiff) and the third factor (the plaintiff's interest in the records) often have been combined "into a single factor assessing whether a plaintiff 'has sufficient private incentive to seek disclosure' of the documents without

expecting to be compensated for it." *McKinley*, 739 F.3d at 711 (quoting *Davy II*, 550 F.3d at 1160). "When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate." *Cotton*, 63 F.3d at 1120; *see also Fenster*, 617 F.2d at 744 ("[T]he private self-interest motive of, and . . . pecuniary benefit to, the complainant (is) sufficient to insure the vindication of the rights given in the FOIA.") (quoting S. Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)).

Here, even though Plaintiff was not interested in the ROP for commercial reasons, there is no dispute that he sought the documents due to his own personal interest—namely, his desire to obtain lawful immigration status in the United States and contest a removal order. *See* Compl. ¶ 5; Pl.'s Mot. at 3 ("On or about September 26, 2020, Plaintiff came to the attention of ICE and was informed that he had a removal order, which ICE was seeking to enforce."). Plaintiff cannot plausibly argue that there was any other purpose for his request or that the information sought was intended to benefit anyone other than himself. Of course, "[n]othing is wrong with self-interested FOIA requests, they just are less likely to result in an award of attorneys' fees." *Poitras v. Dep't of Homeland Sec.*, Civ. A. No. 15-1091 (BAH), 2019 WL 1569561, at *9 (D.D.C. Apr. 11, 2019). Because there is no dispute that Plaintiff was motivated only by his own private interests, this factor counsels against an award of attorneys' fees. *See e.g., Davy II*, 550 F.3d at 1160-61; *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (reversing award of attorneys' fees because "no evidence exists that the release of the two non-exempt documents will contribute to the public's ability to make vital political choices" when plaintiff "sought these documents for the sole purpose of facilitating her employment discrimination suit").

C.    **The Delay in Processing Plaintiff's FOIA Request Does Not Warrant The Award of Costs or Fees.**

The final factor "'considers whether the agency's opposition to disclosure had a reasonable basis in law' and 'whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *McKinley*, 739 F.3d at 712 (quoting *Davy II*, 550 F.3d at 1162). Plaintiff argues that this final factor favors an award of fees because there was a delay in the processing of his FOIA request. Pl.'s Mot. at 8.   But this is not so. Indeed, "an agency's failure to respond to a FOIA request within the statutory timeline is not automatically unreasonable." *Poitras*, 2019 WL 1569561, at *9.  Rather, the "departure from the statutory obligation must truly have been unreasonable." *Id.*

In this case, there is no evidence that EOIR acted with any recalcitrance or that the delay was unreasonable under the circumstances.  Plaintiff submitted his FOIA request in this case during a time when the EOIR FOIA personnel were under enormous constraints via FOIA case backlogs, the pandemic, and personnel cutbacks. *See* Souza Decl. ¶¶ 8-14.  Despite these issues, EOIR promptly responded to Plaintiff and requested the relevant ROP from the Baltimore Immigration Court. *See* Souza Decl. ¶¶ 11-14.  And when the ROP's were received they were promptly issued to Plaintiff. *See* Souza Decl. ¶¶ 16-19.  So, while there may have been a delay in producing documents to Plaintiff, EOIR was not exhibiting obdurate behavior or otherwise acting unreasonably under the circumstances. Additionally, there is no indication that Plaintiff made any attempt to learn the status of his request or prompt a more expedient response before filing his lawsuit. *See* Souza Decl. ¶ 15.  Accordingly, this factor does not favor an award of attorneys' fees.

D.    **The Weight of The Entitlement Factors Counsel Against an Award of Attorneys' Fees**

In sum, all the entitlement factors in this case counsel against any award of fees or costs. Plaintiff's request did not benefit the public; his interest in the request, while not commercial, was

motivated by his own pursuit of a lawful immigration status; and although shortly delayed due to uncontrollable circumstances, there is no evidence that the Agency acted unreasonably or that it engaged in obdurate behavior.  And while Defendants believe Plaintiff's argument lacks merit for the reasons described above, even if the Court were to credit any of his arguments, it would not change the fact that the overall weight of the entitlement factors in this case strongly counsel against an award of attorneys' fees.

"FOIA was fundamentally designed to inform the public and not to benefit private litigants." *Tax Analysts*, 965 F.2d at 1095 (internal citations and quotations omitted).  "[T]he first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy II*, 550 F.3d at 1160.  While "[t]he former engage in the kind of endeavor for which a public subsidy makes some sense, and they typically need the fee incentive to pursue litigation; the latter cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate." *Id.*  Thus, the D.C. Circuit has "reversed an award of attorney's fees where the plaintiff was an attorney requesting information in preparation of private litigation for a client . . . and upheld a denial of fees where a nonprofit organization was reprinting federal tax decisions in a newsletter sent to paying subscribers." *Id.*

Here, as demonstrated by the discussion above, there is no dispute that the records Plaintiff sought were for his own personal advantage—namely, his pursuit of lawful immigration status— and not for the advancement of any public informational purpose.  Thus, even if the Court considered the Agency's delay in responding to Plaintiff's FOIA request to be unreasonable, that alone would not otherwise make Plaintiff entitled to attorneys' fees. *See Simon v. United States*, 587 F. Supp. 1029, 1032–33 (D.D.C. 1984) ("[W]hile an agency's failure to meet deadlines is not

to be condoned, it does not warrant an award of fees in and of itself."); *Frye v. EPA*, Civ. A. No. 90-3041, 1992 WL 237370, at *6 (D.D.C. Aug. 31, 1992) (holding that, even in light of agency's unreasonable delay, "an award still would not be warranted here given the Court's findings on factors one through three," which counseled against an award); *cf., Beltranena v. Dep't of State*, 821 F. Supp. 2d 167, 180 (D.D.C. 2011) (noting that while delays may be "frustrating," an award of attorneys' fees is not appropriate where agency performed adequate searches, properly applied exemptions, and carefully performed segregability analysis). Because the weight of the entitlement factors in this case do not support an award of attorneys' fees, Plaintiff's motion should be denied.

## **CONCLUSION**

For the reasons stated above, Defendant respectfully requests that this Court deny Plaintiff's Motion for Attorneys' Fees and Costs.

Dated: April 11, 2022                    Respectfully Submitted,

                                         MATTHEW M. GRAVES, D.C. Bar #481052
                                         United States Attorney

                                         BRIAN P. HUDAK
                                         Acting Chief, Civil Division

                                         By:   /s/ *Thomas W. Duffey*
                                         THOMAS W. DUFFEY
                                         Assistant United States Attorney
                                         601 D Street, N.W.
                                         Washington, DC 20001
                                         Telephone: 202 252 2510
                                         Email: thomas.duffey@usdoj.gov

                                         *Counsel for Defendant*